WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pauline R. Turchetta, | No. CV-16-3244-PHX-DKD |
| Plaintiff, | |
| v. | **ORDER** |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pauline R. Turchetta appeals from the denial of her application for benefits by the Social Security Administration. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and, with the parties' consent to Magistrate Judge jurisdiction, pursuant to 28 U.S.C. § 636(c). Turchetta argues that she is entitled to benefits because the ALJ decision is not supported by substantial evidence and contains legal errors. (Doc. 20) As detailed below, the Court agrees.

**Background**

Turchetta's past relevant work was as a binding and cutting machine operator, digital copy machine operator, in customer service, and as a supervisor. (Tr. 64-65) Her alleged onset date of disability was December 1, 2012. (Tr. 20)

Administrative Hearing. On January 26, 2015, ALJ Christa Zamora conducted a hearing where Turchetta and vocational expert David Janus testified. (Tr. 41-68) Turchetta testified that that she had "constant pain" from a tear in her stomach and a bad

hernia, arthritis in her hands and lower back, fibromyalgia, "tingling" in her hands and feet from her diabetes, and fatigue. (Tr. 47, 61) She also testified that she was missing a portion of her left lung and had trouble breathing. (Tr. 47) To manage her valley fever symptoms, she stays inside on "bad air days." (Tr. 59) She testified that her mental health symptoms had recently increased in intensity and she was taking anxiety and depression medications. (Tr. 58-59) She testified that she goes to a doctor appointment at least twice a week. (Tr. 54)

Turchetta testified that her daughter and her daughter's boyfriend drove her to California in 2012 and they stopped hourly to accommodate her pain. (Tr. 49, 52-53) She testified that she has not traveled since then. (Tr. 48-49) She testified that she tries to walk as much as she can but can only manage a "couple blocks." (Tr. 58)

Turchetta further testified that she had used marijuana once since 2012. (Tr. 53) She stated it was recreational but also that her doctors encouraged her to end her use of pain medication. (Tr. 54)

Turchetta testified that she had surgery to repair a tear in her left shoulder and that a similar surgery for her right shoulder had been scheduled. (Tr. 47) She also has hepatitis C and chronic kidney disease. (Tr. 50) She was experiencing undiagnosed vein problems and, at the time of the hearing, had been undergoing additional testing at the direction of a cardiologist. (Tr. 50-51) She had also had two carpal tunnel surgeries which improved her pain but she was still experiencing weakness in her hands, numbness in her fingertips, and problems turning a doorknob. (Tr. 55) Turchetta testified that she could sit for 15-20 minutes at a time before she needed to stand up or lie down. (Tr. 48) She further testified that she could not lift more than five pounds and could not bend over. (Tr. 55, 57)

Vocational expert David Janus testified. (Tr. 63-67) The ALJ asked VE Janus about a hypothetical person with Turchetta's background who was limited to medium exertion with "occasional climbing ramps and stairs, ladders, ropes, and scaffolds; occasional balance, heights, and occasional to [sic] moving machinery; frequent handling

and fingering; frequent overhead reaching; and frequent exposure to dusts, fumes, and pulmonary irritants." (Tr. 64) VE Janus responded that all past work could be performed. (Tr. 64) It appears that the ALJ presented this hypothetical based on the limitations proposed by the State Agency medical consultants. (*Compare* Tr. 30 *with* Tr. 64) If the limitations were modified to "light exertional," the copy machine operator and customer service positions could still be performed. (Tr. 64) If limitations were further modified so that the handling, fingering, and reaching categories were limited to occasional, then past work would not be possible. (Tr. 65) Instead, the only position available would be a counter clerk. (Tr. 65-66) That position would permit a maximum of ten percent allowance for being off-task, less than one absence per month, and would require standing six of eight hours a day. (Tr. 66-67)

<u>ALJ Decision</u>. The ALJ's decision tracked the requisite five step process. First, the ALJ found that Turchetta had not engaged in any substantial gainful activity since her alleged onset date. (Tr. 23) Next, the ALJ found that Turchetta had the following severe impairments: carpal tunnel syndrome, osteoarthritis of the hand, left de Quervaines, rotator cuff syndrome in both shoulders, valley fever, cervical lymphadenopathy on the left, and obesity. (Tr. 23) As relevant here, the ALJ found that Turchetta's fibromyalgia, spondylosis, radiculopathy, and diabetic peripheral neuropathy were not severe. (Tr. 23-26). The ALJ found that none of Turchetta's severe impairments met or medically equaled the severity of a listed impairment. (Tr. 26)

The ALJ found that Turchetta's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely credible." (Tr. 28) The ALJ gave little weight to the Third Party Function Report submitted by Turchetta's mother and little weight to the opinions provided by Turchetta's treating provider, Renee Ostin, FNP-C. (Tr. 27, 29) Instead, the ALJ gave significant weight to the State Agency medical consultants. (Tr. 30)

The ALJ concluded that Turchetta could perform her past relevant work as a digital machine operator, customer service representative, and supervisor. (Tr. 32)

Accordingly, the ALJ found that Turchetta did not meet the Social Security Act's definition of disability. (Tr. 32)

**Standard of Review**

This court must affirm the ALJ's findings if they are supported by substantial evidence and are free from reversible error. *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence is more than a mere scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In determining whether substantial evidence supports the ALJ's decision, the court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir. 1988). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Thus, the Court must affirm the ALJ's decision where the evidence considered in its entirety substantially supports it and the decision is free from reversible error. 42 U.S.C. § 405(g); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

**Analysis**

Fibromyalgia. On appeal, Turchetta first argues that the ALJ should have found that her fibromyalgia was a severe condition. (Doc. 20 at 14-15; Doc. 26 at 2-3) Under Social Security Ruling ("SSR") 12-2p, one of the criteria for determining that an applicant's fibromyalgia is a medically determinable impairment requires (1) a history of widespread pain, (2) evidence from a medically acceptable source documenting at least 11 of 18 tender points, and (3) evidence that other disorders that could cause the symptoms were excluded. 2012 WL 3104869 at 2-3. Defendant appears to concede, as they must, that Turchetta's medical record shows a history of widespread pain and that her broad testing shows that other disorders which could have caused the symptoms were excluded. (Doc. 21 at 4-5) Instead, Defendant argues that Turchetta's fibromyalgia was

never diagnosed by a licensed medical physician as required by SSR 12-2p. (Doc. 21 at 4) This is incorrect: Turchetta's fibromyalgia was diagnosed by Ronald Burns, M.D., when he found 17 of 18 trigger points during his examination of her on May 5, 2014.[1] (Tr. 719)

The State Agency's consultative examiner noted that Turchetta alleged fibromyalgia and included fibromyalgia in the "Past Medical History" and "History of Present Illness" sections of the report. (Tr. 347-48) However, the report does not contain any other reference to, or evaluation for, fibromyalgia. (Tr. 350-51, 357) Accordingly, the only apparent conclusion is that the consultative examiner did not examine Turchetta for fibromyalgia.

The State Agency medical consultants, like the ALJ, found no evidence of fibromyalgia trigger points at the initial denial level. (Tr. 364, 378) This was in error because the consultants' own notes state "fibromyalgia diagnosed Dr. Nolan 7-2010." (Tr. 378, 379) At the reconsideration level, the consultants' notes acknowledge that Turchetta's medical records show she was positive for trigger points in July 2013 and that she was diagnosed with "fibromyalgia w/trigger point tenderness" in August 2013. (Tr. 452, 466) However, there is no acknowledgement of these records and no inclusion of this diagnosis in the medical consultants' conclusions.

Because Turchetta meets the criteria established by SSR 12-2p, the ALJ should have found that her fibromyalgia was a medically determinable impairment. This means that Turchetta's fibromyalgia should have been included in the ALJ's disability determination process. 20 C.F.R. § 404.1523. This error was not harmless. Moreover, the ALJ's reliance on the State Agency's consultative examiner report was misplaced since that report did not include any fibromyalgia evaluation. Accordingly, the medical consultants' evaluation was not entitled to "significant weight" because it did not acknowledge or address her fibromyalgia. (Tr. 30)

---

[1] She had been previously diagnosed with fibromyalgia by a licensed medical physician but those medical records did not also include a specific number of trigger points. (Tr. 398)

- 5 -

<u>Turchetta's Testimony</u>. An ALJ must engage in a two-step analysis in evaluating the credibility of a claimant's testimony regarding alleged symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Id*. at 1281. Second, when there is no affirmative evidence suggesting malingering, the ALJ must also set forth "specific, clear and convincing reasons" before it can reject a claimant's testimony about the severity of symptoms. *Id*. at 1283-84. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The clear and convincing standard is the most heightened standard in Social Security Law. *Moore v. Soc. Sec. Admin.*, 278 F.3d 920 (9th Cir. 2002). Once an underlying impairment is verified, an ALJ cannot use a lack of full and objective medical corroboration to reject a claimant's subjective symptoms. *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986), *superseded by statute on other grounds as stated in Bunnell v. Sullivan*, 912 F.2d 1149 (9th Cir.1990). To support a finding that the symptoms are not credible, the ALJ must offer specific findings properly supported by the record in sufficient detail to allow a reviewing court to review the findings for permissible grounds and freedom from arbitrariness. (*Id*.) Moreover, the mere fact that Turchetta engages in some daily activities does not in any way detract from the credibility as to her overall disability, as a claimant does not need to be "utterly incapacitated" in order to be disabled. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Such activities of daily living can only be used to reject a claimant's testimony if those activities actually show that a claimant can work or they are inconsistent with a claimant's testimony regarding what he or she can do. (*Id*.)

The ALJ found that Turchetta's "allegations regarding the severity of her physical symptoms and limitations are not supported by the objective clinical findings and observations contained in the record." (Tr. 30) As noted above, this generic conclusion is inaccurate because Turchetta's objective clinical findings included a diagnosis of

fibromyalgia by a treating physician. Moreover, as detailed below, the citations provided by the ALJ were insufficient to support this conclusion.

First, the ALJ points to a treatment note where Turchetta "stated she was stressed. Nevertheless, [Turchetta] reported her medication was working and she was doing well." (Tr. 30) The ALJ does not further explain how this "History of Present Illness" note about the efficacy of her pain medication and her self-described ability to manage stress undermines Turchetta's credibility and any such contradiction is not readily apparent to the Court. The ALJ also stated that "Turchetta testified that she had difficulty breathing but her treating provider indicated that her spirometry was normal and oximetry was 98%." (Tr. 30) This assertion about her treating provider's records has no citation to the record and so it does not support the ALJ's conclusion.

Next, the ALJ notes that Turchetta "had a colostomy for her conditions but there were no subjective urinary changes." (Tr. 30) There is no further explanation and it is unclear how the absence of urinary changes—after a partial colostomy and before the reversal procedure—undermines Turchetta's credibility.

The ALJ then states that Turchetta's "treating provider indicated she could return to all of her normal activities" and cites to a post-carpal tunnel surgery plan written by a physician assistant in September 2012. (Tr. 30) The ALJ does not explain how this comment, written about one of Turchetta's severe conditions before her alleged disability onset date, undermines Turchetta's credibility about her on-going pain. Later, the ALJ again points to this note to conclude that the record does not support Turchetta's self-imposed limitations. (Tr. 31) Specifically, the ALJ contrasts this post-carpal tunnel surgery note with the consultative examiner's report. (Tr. 31) The consultative examiner's report was written six months later and discussed Turchetta's return to work after the surgical reversal of her colostomy. This compares apples to oranges and does not support the ALJ's conclusions.

Next, the ALJ notes that Turchetta overused her pain medication. (Tr. 30-31) Although unwise, using additional pain medication implies that Turchetta was, in fact,

- 7 -

experiencing pain. The ALJ also states that although Turchetta "is obese and doctors recommended she exercise, [she] did not comply with her exercise program." (Tr. 31) In support of this, the ALJ cites to two medical records and one physical therapy record. The two medical records note that Turchetta does not exercise but do not indicate that she was out of compliance with an exercise program. (Tr. 288, 502) The physical therapy record notes that Turchetta acknowledged non-compliance with the home exercise program for her shoulders during the one day between her first and second physical therapy sessions. (Tr. 748) This isolated incident of non-compliance for shoulder treatment does not implicate the credibility of her pain testimony.

Finally, the ALJ stated that Turchetta had "provided inconsistent statements." (Tr. 31) However, the record citations in the decision do not establish inconsistency. For example, the ALJ contrasts a February 2013 self-report where Turchetta wrote that she was not able to perform housework with a June 2014 medical record where Turchetta reported pain after attempting housework. (Tr. 31) The earlier self-report also noted that she had a colostomy bag and was not able to perform her normal activities. (Tr. 153) Thus, when viewed in context, any change in her ability to perform housework is readily explained. Moreover, her ability to perform some housework is not dispositive to her disability claim. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

The ALJ also alleged that Turchetta stated that she "has difficulty sleeping" but did not provide a citation for this conclusion and this was not part of Turchetta's hearing testimony. (Tr. 31) Accordingly, the Court will not consider this to support the ALJ's conclusions.

The ALJ noted that Turchetta testified that she did not currently use marijuana and that she testified that she had used it in the past. (Tr. 31) The ALJ then used these two statements to conclude that the information provided by Turchetta "may not be entirely reliable." (Tr. 31) The Court disagrees that her statements support such a conclusion: acknowledging one incident of past use while disclaiming all current use does not implicate Turchetta's reliability.

Next, the ALJ stated that Turchetta alleged "extremely limited daily activities" but "she was able to travel to California." (Tr. 31) However, Turchetta testified that her daughter and her daughter's boyfriend drove her to California in 2012 and they stopped hourly to accommodate her pain. (Tr. 49, 52-53)

The ALJ contrasted Turchetta's allegation of debilitating back pain with citations to two medical records which noted a "normal gait." (Tr. 31) However, these records were focused on managing her diabetes and managing her valley fever and asthma; both records noted a normal gait as part of a comprehensive checklist of systems. (Tr. 493-516) In other words, these are not medical records that included any actual examination of her gait or back pain. Accordingly, these citations do not support the ALJ's conclusion that Turchetta's "complaints are overstated." (Tr. 31)

As detailed herein, the ALJ has not provided specific, clear, or convincing reasons to discount Turchetta's testimony and so the Court cannot conduct a meaningful review of the decision. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493-94 (9th Cir. 2015). This constitutes non-harmless legal error.

**Remand**

The decision to remand a case for additional evidence or for an award of benefits is within the discretion of this court. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989). The court can remand a case with instructions to award benefits when

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Here, all three parts of this test have been met. First, the record was fully developed and further administrative proceedings would impermissibly allow the "ALJ to have a mulligan." *Id.* at 1021. Second, as described above, the ALJ's should have found that Turchetta's fibromyalgia was a medically determinable impairment. Moreover, the ALJ did not provide a sufficient explanation for rejecting her pain testimony. Finally, if the ALJ had credited

her testimony as true, the ALJ would be required to find that Turchetta was disabled. (Tr. 48 55, 66, 67)

**IT IS THEREFORE ORDERED** that Pauline R. Turchetta's claim for disability is remanded to the Commissioner of the Social Security Administration for an award of benefits.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

Dated this 30th day of October, 2017.

_____
David K. Duncan
United States Magistrate Judge